**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**Ruby Burton,**                     )        **CASE NO. 1:06 CV 2466**
                                     )
                **Plaintiff,**       )        **JUDGE PATRICIA A. GAUGHAN**
                                     )
        **vs.**                      )
                                     )
**Dofasco Tubular Products, et al.,**  )        <u>**Memorandum of Opinion and Order**</u>
                                     )
                **Defendants.**      )


   <u>**Introduction**</u>

       This matter is before the Court upon Motion for Summary Judgment Filed on Behalf of

Defendant Dofasco Tubular Products (Doc. 33).  This is an employment discrimination case.

For the following reasons, the motion is GRANTED.

   <u>**Facts**</u>

       Plaintiff, Ruby Burton, filed her Amended Complaint against defendants, Dofasco

Tubular Products (hereafter defendant or Dofasco), Copperweld Tubing Products Corp. (CTPC)

and Copperweld Corporation (hereafter, Copperweld).

       Until December 2003, CTPC owned and operated a steel tube manufacturing facility in

1

Shelby, Ohio.  In December 2003, CTPC's parent company, Copperweld, assumed direct

ownership and operation of the Sheby facility.  In October 2005, Atlas Tube, Inc. purchased all

of the issued and outstanding stock of Copperweld and sold certain former Copperweld assets,

including the Shelby facility, to Dofasco which assumed ownership and operation of the Shelby

facility on October 3, 2005 when employees of the Shelby facility began their employment with

Dofasco.  (Victor Riva aff.)

      CTPC hired plaintiff on July 17, 1995.  (Howard Knapp aff.)  Plaintiff is an African

American female whose date of birth is November 8, 1957.  (pltf. depo; Am. Compl.)

Throughout her employment, plaintiff has been represented by the United Steelworkers of

America (the Union) and has been covered by a collective bargaining agreement (CBA).  (pltf.

depo.)  The Shelby facility consists of two plants, Plant 1 and Plant 2, and a warehouse facility.

Throughout her employment, plaintiff has held hourly production positions in Plant 1 and has

held Union offices.  (pltf. depo.; Knapp aff.)

      The Union has been a party to a series of CBAs with each containing a provision

prohibiting workplace harassment, discrimination, and retaliation based on, *inter alia*, sex and

race.  The CBAs contained a grievance procedure which authorizes the Union or any represented

employee to file a grievance over any alleged violation, culminating in binding arbitration.  (pltf.

depo. Exs. 4-6)

      Additionally, each of the companies that has owned the Shelby facility has maintained an

identical, written policy against discrimination and harassment.  The policy is posted in locations

within the facility frequented by employees. (Knaff. aff. and Ex. D) The policy advises

employees that harassment should be reported to their supervisor, the facility's Manager of

2

Human Resources, or any other member of the facility's human resources staff.  Further, a

prompt and thorough investigation of any sexual harassment report will be made, and any

employee found to have engaged in harassment will be disciplined, up to and including

discharge. (Knaff. aff. Ex. D)

> Plaintiff filed two charges with the Ohio Civil Rights Commission (OCRC)/EEOC.  The

first, filed on June 23, 2005, alleges sex discrimination and sexual harassment from September 1,

2004 through June 23, 2005 and states that plaintiff was sexually discriminated against

> by the presence of a doll's head and sexual pictures of naked women on equipment and in
> work area.  On 5-5 or 5-6-05 I found an envelope (yellow) with hand drawn pictures that
> were left in work area that I feel are very offensive.

(pltf. depo. Ex. 20) The second, filed on November 14, 2005, alleges race discrimination, sexual

harassment and retaliation for previously filing a civil rights charge.  The charge asserts that

since the filing of her last charge, defendant had "continued to post sexually explicit material in

the workplace and has left racially derogatory material in the work area."  (*Id.* Ex. 73)

> With regard to the first charge, plaintiff testified to a doll's head with "white out" near its

mouth which plaintiff believed to depict semen and with a sign below its head reading, "Kissing

Doll 25¢ One Kiss."  Plaintiff took a photograph of the doll which she considered to be

demeaning to women.  Plaintiff also described a decal of a partially-nude woman seated on a

motorcycle with the name "Choppers, Inc."  Both items were located in the Line 2 eddy shack, a

12 feet by 12 feet enclosed structure within Plant 1 to which plaintiff was not regularly assigned.

(pltf. depo.; Knapp aff.) [1]

---

[1]     The envelope containing the hand-drawn pictures was located in the same area
and was discovered by plaintiff in a drawer.  Although she was not assigned to the
area at the time, plaintiff found the pictures when she opened the desk to find

Howard Knapp, defendant's Industrial Relations Specialist, avers that upon receipt of the first OCRC charge defendant undertook an investigation as to plaintiff's allegations.  Knapp telephoned plaintiff at home (because she was on temporary disability leave due to an ankle injury) to obtain additional information.  Plaintiff informed Knapp that he should contact her attorney if defendant wanted additional information and refused to discuss the allegations with Knapp.  (Knapp aff.)  Plaintiff's attorney refused to provide information requested by defendant's counsel despite two requests to do so.  (Kurt Miller aff.)

As a result, defendant conducted its investigation based on the information set forth in plaintiff's charge. Knapp and Tom Thomas, a Plant Superintendent, interviewed various supervisors, bargaining-unit employees and Union officials.  They also inspected the relevant work areas.  The doll's head was discovered by a supervisor in the Line 2 eddy shack and Knapp removed it.  The decals were not found and no one was aware of them.  The Union officials informed Knapp that plaintiff had never complained to them about sexual harassment or discrimination.  Because no employee was identified as discriminating against or harassing plaintiff, no one was disciplined.  The defendant's policy against harassment and discrimination was, however, reviewed with the employees in plaintiff's work area.  Knapp concluded his investigation on July 29, 2005, and he wrote plaintiff a letter on that date informing her of the results.  The letter summarized defendant's findings, discussed above, and instructed plaintiff that should she continue to believe that she is being discriminated against or sexually harassed,

---

paper on which to write a note for a co-worker.  (pltf. depo.)  Plaintiff does not mention the envelope with the drawings in her brief.  She apparently agrees with defendant that because the drawings were found by plaintiff in a drawer hidden from view in an area to which plaintiff was not assigned, they are not relevant to plaintiff's claims.

she should contact Knapp or the Human Resources Manager.  Plaintiff was also advised that defendant's policy prohibits retaliation for reporting sexual harassment and she should report any such retaliation that she believed to occur.  Plaintiff returned to work from her disability leave on September 6, 2005.  (Knapp aff. and Ex. F)

With regard to the second charge, plaintiff testified at deposition that after filing the first charge and returning to work, she observed the following items at work: a hand drawn picture of a black female with the words, "I'm the bitch from hell," hanging on the bulletin board in her work area; a cardboard poster containing a caricature of one man performing fellatio on another man hanging in the area where the schedule is posted; and a newspaper article on fugitive slaves found by plaintiff in her work area.  (pltf. depo.)

Plaintiff also submits her own affidavit which avers that after filing the first OCRC charge, someone put a metal no parking sign with red and blue devils and the word "nigger" on her windshield.  Additionally, in February 2005, someone put a big poster near plaintiff's work area stating, "Bingo Live Entertainment."  There was also a tag stating, "Part Time Bingo! Part Time Tuby!  Just Our Little Part Time Ruby!"  Plaintiff took a photograph of the bingo poster and tag.  (pltf. aff. and Exs. A, B)[2]

Plaintiff thereafter filed this Complaint.  An Amended Complaint was subsequently filed which asserts seven claims.  Count One alleges a sexually hostile work environment.  Count Two alleges a racially hostile work environment.  Count Three alleges retaliation.  Counts One through Three are asserted under Title VII.  Count Four alleges a violation of the Equal Pay Act.

---

[2]     Plaintiff also states in her brief that employees "continued" to refer to her as a "bitch."  However, neither the deposition nor affidavit testimony she cites to supports this assertion.

5

Counts Five, Six and Seven assert the same allegations as in violation of Ohio law.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th

6

Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must
"produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d
at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does
not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937,
941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a
scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence
on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476,
479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is
"merely colorable" and not "significantly probative," the court may decide the legal issue and
grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) sexually hostile work environment**

Plaintiff alleges a sexually hostile work environment in violation of Title VII and Ohio
law.

Under Title VII, an employee alleging a hostile work environment based on sexual
harassment must show the following: (1) the employee was a member of a protected class, (2)
the employee was subjected to unwelcome sexual harassment, (3) the harassment complained of
was based on sex, (4) the charged sexual harassment created a hostile working environment and
(5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999); *see
also Williams v. General Motors Corp.*, 187 F.3d 553, 560-61. (6th Cir.1999).

A hostile work environment occurs "[w]hen the workplace is permeated with

7

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys*., Inc., 510 U.S. 17 (1993) (internal quotation and citation omitted). Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim. *Id.* at 21-22.

The fifth element of the five-part showing, employer liability, differs depending upon the identity of the alleged harasser, with a distinction drawn between co-worker harassment and harassment perpetrated by a supervisor. *Nievaard v. City of Ann Arbor,* 124 Fed. Appx. 948 (6th Cir. 2005)  In this case, plaintiff asserts co-worker harassment.  Accordingly, defendant cannot be held liable unless it knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action.  *Rudd v. Shelby County*, 166 Fed.Appx. 777 (6th Cir. 2006).  The "employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. If the employer responds in good faith, it cannot be held liable." *Id.*

The elements and legal standards for establishing unlawful employment discrimination are the same under both Ohio law and Title VII.  As such, the state and federal discrimination claims need not be analyzed separately. *Overall v. RadioShack Corp*., 202 Fed.Appx. 865 (6th Cir. 2006) (citing *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir.2000) )

As evidence of a sexually hostile work environment, plaintiff points to the decal of a partially-nude woman, the kissing doll, the picture of a black woman with the "bitch from hell" epithet, the poster containing a caricature depicting fellatio, the metal no parking sign and the

8

bingo poster and tag.

Defendant argues that the charged sexual harassment fails to show a hostile working environment because plaintiff does not demonstrate harassment sufficiently severe or pervasive to alter the conditions of the her employment and which created an abusive working environment.  Nevertheless, defendant asserts, it cannot be held liable because it did not manifest indifference or unreasonableness in light of the facts known, but responded in good faith.  For the following reasons, this Court agrees.

Plaintiff has not demonstrated sexual harassment sufficiently severe or pervasive to alter the conditions of the her employment and which created an abusive working environment.

The metal no parking sign and the bingo poster and tag had nothing to do with plaintiff's sex and, therefore, are not evidence of a sexually hostile work environment.

Remaining as evidence to support a sexually hostile work environment are the decal of a partially-nude woman, the kissing doll, the picture of a black woman with the "bitch from hell" epithet and the poster containing a caricature depicting fellatio.  For the following reasons, these do not amount, as a matter of law, to a workplace so permeated with discriminatory intimidation, ridicule and insult so as to alter the conditions of plaintiff's employment.

The decal and doll were not in plaintiff's regular work area, but were in an area where plaintiff was temporarily assigned.  Nor was the poster in plaintiff's work area. The picture with the epithet, while offensive, appears to have been an isolated incident which cannot create a hostile work environment unless extremely serious.  *Johnson v. Rumsfeld,* 2007 WL 1892075 (6th Cir. June 29, 2007) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ).  Even taking the four items together, this does not amount to sexual harassment because the conduct was not

pervasive.  The doll and decals were observed by plaintiff sometime in 2004 and the poster and

picture of a black woman were observed in November 2005.  Four instances over the course of

more than a year do not amount to a workplace permeated with insult.  *See Burnett v. Tyco*

*Corp.,* 203 F.3d. 980 (6th Cir. 2000) (finding three allegations of sexual harassment over six

months insufficiently pervasive because they did not qualify as commonplace, ongoing, or

continuing).

      Even if the Court finds that plaintiff has demonstrated that the four incidents of charged

sexual harassment created a hostile working environment, she cannot show employer liability.

In particular, plaintiff fails to establish that defendant's response manifests indifference or

unreasonableness.

      As discussed above, defendant promptly undertook an investigation after it first became

aware of plaintiff's complaints through her first OCRC/EEOC charge.  Defendant undertook the

investigation despite plaintiff's refusal to assist in it.  During the course of the investigation, the

doll's head was discovered and immediately removed.  The decals were not found at this time

within Plant 1's 1 million square feet of space.[3]  (Knapp aff.) Plaintiff testified that she does not

recall ever complaining about the decals.  (pltf. depo. 175) Thus, it can be assumed that

defendant first learned of them through plaintiff's OCRC/EEOC charge.  Plaintiff points to

supervisor Thomas McCohn's testimony that he saw the decals on the production floor at one of

the stations but did not do anything about them.  (McCohn depo. 71-72) He also testified,

however, that no one complained to him about them.  (*Id.*)  Nonetheless, they were promptly

---

[3]     Plaintiff took a photograph of the decals which appear to be small stickers affixed
to a machine in the Plant.  One of the two stickers depicts the partially clad
woman.  (pltf. depo. Ex. 53)

removed by defendant after plaintiff returned from her disability leave and she pointed them out to a supervisor.  (pltf. depo. 173-175)  Defendant promptly removed the caricature poster after it was discovered by management in November 2005.  (pltf. depo. 216-218)  Thus, it is clear that defendant took prompt action as to these three items.  Accordingly, plaintiff cannot establish that defendant's response manifested indifference or unreasonableness.

As to the remaining item, plaintiff testified that upon finding the picture of the black woman, she took it down.  She made a copy and sent it through interoffice mail to superintendent Thomas who did not respond.  She also reported it to supervisor Pinkston who asked her for the picture but plaintiff refused to give it to him.  Pinkston told plaintiff that he "would get to the bottom of it" but plaintiff never had any further discussion about it with Pinkston.  (pltf. depo. 212-213)  Thus, plaintiff's testimony shows that she removed the picture when she saw it and defendant did not have an opportunity to do so.  Plaintiff is apparently dissatisfied with defendant's failure to investigate the picture.  While Thomas may have responded with indifference, it appears that Pinkston attempted to assist plaintiff but she refused to give the picture to him.  Thus, defendant's response was not unreasonable.  Even assuming that Thomas and Pinkston reacted with indifference, one incident is insufficient to establish liability.

For these reasons, plaintiff fails to establish a sexually hostile work environment or defendant's liability.

### (2) racially hostile work environment

Plaintiff alleges a racially hostile work environment in violation of Title VII and Ohio law.  These claims are analyzed in the same manner as the sexually hostile work environment claims.  *See Kelly v. Senior Centers, Inc.,* 169 Fed. Appx. 423 (6th Cir. 2006).  As stated above,

the state and federal claims are analyzed in the same manner.

Plaintiff points to the following evidence:

• Supervisor McCohn testified that he was instructed by superintendent Thomas to write plaintiff up for tardiness, while a white male was not written up for the same infraction. (McCohn depo. 23)

• Supervisor McCohn testified that he was told to write plaintiff up for failing to check a product, a stencil on a tube, while other white employees who did not stencil tubes were not written up. (McCohn depo. 24, 31-32)

• In March 2000, plaintiff was denied a decrease in force bump for lack of training.  Soon after, defendant began denying plaintiff's doctor's slips.  (pltf. aff.)

• In May 2001, a white male bumped plaintiff on a decrease in force bump. Superintendent Thomas told plaintiff that he was making an exception to the rules and allowing the white employee to have training.  (pltf. aff.)

• An employee told plaintiff that the company had a "lynching crew in place" for plaintiff and that he had "saved [her] black ass from being fired."  (pltf. depo. 148, 150)

• A newspaper article on fugitive slaves was found by plaintiff in her work area.  (pltf. depo. 225-227)

• Supervisor McCohn, an African American, was subjected to racist remarks and heard other supervisors make disparaging remarks about black people.  (McCohn depo. 18, 21, 40)

• Supervisor McCohn observed writing on a bathroom wall stating, "The only good nigger is a dead nigger."  There was also a drawing on the wall of an African American boy with a rope around his neck with the words "jungle bunny" underneath it.  McCohn reported this to superintendent Thomas who stated, "Well you know how people are." (McCohn depo. 33-35)

• Supervisor McCohn observed a doll on the production floor depicting a black person with a face painted white and a rope around its neck.  McCohn did not report the doll. (McCohn depo. 34)

Defendant asserts that the bulk of this evidence is inadmissible because it goes outside

the scope of plaintiff's OCRC/EEOC charge.  For the following reasons, this Court agrees.

12

As stated above, plaintiff's second OCRC/EEOC charge, filed on November 14, 2005, alleges race discrimination, sexual harassment and retaliation for previously filing a civil rights charge.  The charge asserts that since the filing of her last charge on June 23, 2005, defendant had "continued to post sexually explicit material in the workplace and *has left racially derogatory material in the work area*."  (*Id.* Ex. 73) (emphasis added)

Plaintiff's evidence related to unequal disciplinary treatment, bumping, training, disqualification from jobs, racist comments heard by a supervisor, racist material observed by a supervisor and a verbal racist comment directed to plaintiff are unrelated to racially derogatory material in the work area.  "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."  *Hopson v. DaimlerChrysler Corp.,* 157 Fed.Appx. 813 (6th Cir. 2005) *See also Halfacre v. Home Depot, U.S.A., Inc.,* 221 Fed.Appx. 424 (6th Cir. 2007) (The complaint asserting Title VII claims is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.)

Additionally, the OCRC correspondence finding no probable cause to believe that defendant engaged in discrimination makes clear that plaintiff's second charge alleged only that co-workers were allowed to place racially offensive pictures and newspaper articles in plaintiff's work area.  (pltf. depo. Ex. 75) The OCRC found nothing to substantiate this allegation.  Clearly, therefore, the OCRC was not on notice of the other charges made herein (unequal disciplinary treatment, bumping, training, disqualification from jobs, racists comments heard by a supervisor, racist material observed by a supervisor and a verbal racist comment directed to plaintiff) and

13

did not investigate them.

Moreover, the evidence plaintiff points to is outside the scope of the OCRC/EEOC charge because plaintiff asserts therein that the harassment occurred since the filing of her first OCRC/EEOC charge in June 2005.  But the alleged incidents occurred well before that date. Plaintiff's affidavit avers that the bumping, training and disqualification issues occurred in the years 2000, 2001 and 2004.  The unequal discipline occurred between August and October 2004 because this was the only period of time that McCohn was plaintiff's supervisor.  (McCohn depo. 8, 13-14)[4]  Likewise, comments made to McCohn and offensive material he viewed would have occurred during those several months in 2004.

Accordingly, remaining from plaintiff's evidence is the newspaper article.  Additionally, although not identified by plaintiff in the discussion of racial harassment, the Court will consider the picture of the African American woman with the "bitch from hell" epithet and the metal no parking sign with red and blue devils and the word "nigger." The Court notes, however, that the latter was placed on plaintiff's windshield and was not in her work area.  Moreover, this evidence occurs only in plaintiff's affidavit.  Despite being questioned earlier at deposition regarding instances of sexual or racial harassment, plaintiff did not identify this item although she identified the other items.  It is well-settled that a party cannot create a genuine issue of material fact by submitting an affidavit that contradicts her earlier deposition testimony.  *Preston v. Clayton Homes, Inc.*, 167 Fed.Appx. 488 (6th Cir. 2006) (citations omitted).   Nonetheless, in an overabundance of caution, the Court will consider this evidence.  Even so, these three

---

[4]     McCohn, in fact, was only employed by defendant from June 2004 through October 2004.  He was terminated.  He believed his termination was based, in part, on race discrimination.  (McCohn depo. 8, 14, 17)

instances, alone, fall short of establishing an atmosphere permeated with racial intimidation, ridicule, and insult so as to create an abusive working environment.  On this basis, summary judgment is warranted.

Even if plaintiff demonstrated that a racially hostile work environment existed, she has not shown defendant's liability.  Plaintiff appears to argue that this case involves supervisory as well as co-worker harassment because tangible employment actions occurred with regard to discipline, bumping, training, etc.  As discussed above, however, these incidents are not before this Court.  This leaves only alleged co-worker harassment.  As noted by the OCRC in its no probable cause letter, defendant took reasonable action after being informed of plaintiff's allegations of a hostile job environment.  This Court also finds that there is no evidence that defendant did not exercise good faith in this matter.

For these reasons, plaintiff has not established a racially hostile work environment.

**(3) retaliation**

Plaintiff alleges retaliation in violation of Title VII and Ohio law.  As with the claims above, the state and federal claims are analyzed in the same manner.

To succeed on this claim, plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  If plaintiff establishes a prima facie case, the burden of production of evidence shifts to the employer to identify a legitimate, nondiscriminatory reason for its actions. The plaintiff then must

15

demonstrate that the proffered reason is pretextual. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000).

Plaintiff's November 14, 2005 OCRC/EEOC charge alleges retaliation for previously filing a civil rights charge.  The previous charge was filed in June 2005.  The November 2005 charge asserts that since the filing of her last charge, defendant had "continued to post sexually explicit material in the workplace and has left racially derogatory material in the work area."

The OCRC's no probable cause finding as to plaintiff's second charge makes clear that the agency only investigated plaintiff's allegation that, following the filing of the first charge, defendant allowed plaintiff's coworkers to place racially offensive pictures and newspaper articles in her work area. (pltf. depo. Ex. 75)   As discussed above, this Court concludes that plaintiff was not subjected to harassment.

Plaintiff now asserts that supervisors subjected her to harassment and took adverse employment actions against her in the form of placing negative reports in plaintiff's personnel file, issuing reprimands not given to other employees for the same conduct and unfairly assessing attendance points against her.  These alleged forms of retaliation were clearly not investigated by the OCRC and, therefore, cannot form the basis of plaintiff's retaliation claim here. Nonetheless, plaintiff's affidavit makes clear that the complained of actions allegedly occurred in 2001 and 2004.  These dates precede the filing of plaintiff's OCRC/EEOC charge and, thus, could not have been taken in retaliation for filing her June 2005 charge.  Moreover, in support of her assertions, plaintiff points to the deposition testimony of supervisor McCohn.  As discussed above, McCohn was employed by defendant for several months in 2004- well before plaintiff filed her first OCRC charge.

16

Finally, plaintiff asserts that Howard Knapp's July 29, 2005 letter summarizing the results of defendant's investigation following the filing of plaintiff's first OCRC charge was, in itself, retaliatory because Knapp concluded the letter by stating,

> If, after your return to work, you continue to believe that you are being discriminated against or sexually harassed, please contact me or the Human Resources Manager... Also, ... please contact me or the Human Resources Manager if you believe that anyone is retaliating against you for having filed your sex discrimination and sexual harassment charge.

(Knapp aff. Ex. F) Plaintiff contends that this attempted to deprive plaintiff of her right to report harassment or retaliation to a *supervisor*, as permitted by defendant's policy.  This Court agrees with defendant, however, any objective observer would view the letter of having the purpose of affording plaintiff a direct avenue of relief from any alleged harassment.  The Court cannot reasonably construe it as being retaliatory.

Having failed to establish a prima facie case, plaintiff's retaliation claims fail.

**(4) EPA**

Plaintiff alleges a violation of the Equal Pay Act and its state counterpart but fails to respond to defendant's motion as to these claims.  Plaintiff has apparently abandoned these claims and summary judgment is warranted.

**<u>Conclusion</u>**

For the foregoing reasons, the Motion for Summary Judgment Filed on Behalf of Defendant Dofasco Tubular Products is granted.

IT IS SO ORDERED.


                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge


Dated: 9/5/07

18